# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| FRANK BURKS and CORNELIUS L. JONES, JR., | ) ) ) | |
| Plaintiffs, | ) ) | No. 12 C 8164 |
| v. | ) ) | Magistrate Judge Maria Valdez |
| UNION PACIFIC RAILROAD CO., | ) ) | |
| Defendant. | ) ) ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiffs' complaint alleges racial harassment and retaliation in violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e *et seq.* ("Title VII"). This matter is now before the Court on Defendant's Motion for Summary Judgment [Doc. No. 61]. For the reasons that follow, Defendant's motion is granted.

## FACTS[1]

At all relevant times, Plaintiffs Frank Burks and Cornelius L. Jones, Jr. were employees of defendant UP, which is an employer within the meaning of Title VII. (Def.'s LR 56.1(a)(3) ¶¶ 1-2.) Both plaintiffs were hired by UP as Signal Helpers, reporting to orientation in Boone, Iowa on January 3, 2011. (*Id.* ¶¶ 5, 19; Pls.' LR 56.1(b)(3)(C) ¶ 1.) They were the only two Black employees in the orientation group. (Pls.' LR 56.1(b)(3)(C) ¶ 1.) During orientation, they were told by Morgan Riley, Manager of Signal Construction, that they would be employed as Signal Helpers through December 31, 2015 or until the company moved in a different direction. (*Id.* ¶ 3.)

Both plaintiffs were aware that they were required to be familiar with and comply with UP's policies and procedures, and they were provided with a copy of UP's equal employment opportunity ("EEO") and affirmative action policy at the time they were hired. (Def.'s LR 56.1(a)(3) ¶¶ 6, 20.) Both were subject to a Collective Bargaining Agreement that covered the terms and conditions of

---

[1] The events are recounted in the light most favorable to the nonmovants, with relevant disputes noted. *See Sow v. Fortville Police Dep't*, 636 F.3d 293, 299–300 (7th Cir. 2011). Unless otherwise noted, the material facts are either undisputed or deemed admitted due to a party's failure to comply with Local Rule 56.1, which this Court strictly enforces. *See Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003); *Malec v. Sanford*, 191 F.R.D. 581, 583-84 (N.D. Ill. 2000). The Court notes that Plaintiffs did not file their exhibit numbers 10 or 12-15, which are the complete depositions of Burks, Harry Doucet, Morgan Riley, Melissa Schop, and Clay Smith. The exhibit appendix filed under Docket Number 71 contains exhibit numbers 1 through 9, and the attached table of contents states that Exhibits 10-15 are filed separately. The title to Docket Number 72 states that it contains "Exs. 11-15, deposition transcripts," but it is actually the same filing as that in Docket Number 71, *i.e.*, Exhibits 1-9. Jones's deposition, Exhibit 11, was filed at Docket Number 73. No other exhibits were filed.

employment. (*Id.* ¶¶ 7, 21.) The job of Signal Helper was subject to a ninety-day probation period. (*Id.*)

## A. Burks's Employment History

After his orientation, Burks was assigned to Zone 5, under foreman Craig Krogmeier, who in turn reported to Riley. (*Id.* ¶ 8.) The job duties for Signal Helper included installing, constructing, wire, digging trenches, climbing poles, and assisting, but Burks primarily dug trenches. (*Id.*; Pls.' LR 56.1(b)(3)(B) ¶ 8.) Burks was first terminated on February 9, 2011, after only twenty days on the job. (Def.'s LR 56.1(a)(3) ¶ 9.) He was discharged by Chad Smith[2] at Riley's direction because "it wasn't working out." (Pls.' LR 56.1(b)(3)(C) ¶ 4.) Burks complained to Melissa Schop, in UP's EEO department, alleging racial discrimination in connection with his termination. (*Id.* ¶ 8; Def.'s LR 56.1(a)(3) ¶ 10.) Schop investigated the complaint and found no evidence that Burks's termination was based on race. Instead, she concluded that he had not been properly coached or given an opportunity to improve his performance before being terminated. (Def.'s LR 56.1(a)(3) ¶ 10; Pls.' LR 56.1(b)(3)(C) ¶ 8.) Burks was then offered reinstatement in exchange for signing a general release containing a new ninety-day probationary period. Burks claims that he was "forced" to sign the release because he needed

---

[2] Smith apparently became Burks's foreman at some point between his January orientation and his termination, but the parties' statements of fact do not specify when this occurred.

3

employment, but he does not allege any facts demonstrating that he did not voluntarily sign the agreement on May 5, 2011. (Def.'s LR 56.1(a)(3) ¶ 11.)

Burks returned to work on May 24, 2011 on Zone 5 in Boone, Iowa, reporting to a new foreman, George Hoy, who also worked under Riley. (*Id.* ¶ 12; Pls.' LR 56.1(b)(3)(C) ¶ 9.) Burks was the only Signal Helper on the gang. (Def.'s LR 56.1(a)(3) ¶ 12.) Burks believed Hoy to be a racist based on Hoy's alleged harsh treatment of him. (Pls.' LR 56.1(b)(3)(C) ¶ 9.) Burks claims that during the morning of May 28, 2011, he was required to dig trenches for four hours in the rain, which was accompanied by lightning and thunder. (*Id.* ¶ 9A; Def.'s LR 56.1(a)(3) ¶ 13.) The U.S. Government Weather Station in Boone, Iowa reported zero precipitation on May 28, 2011, and the National Lightning Detection Network reported zero lightning strikes for a fifteen-mile radius surrounding Boone, Iowa for the same time period. (Def.'s LR 56.1(a)(3) ¶ 13.)

After only seven days of working under Hoy, Burks sought a transfer. (*Id.* ¶ 15.) Burks admitted that Riley reviewed his performance fairly and accurately for the seven days he was on Hoy's gang, and he further admitted that Riley allowed Burks to be paid for Memorial Day even though he was not entitled to be paid for the holiday. (*Id.*)

Following his complaint, Burks was transferred to Zone 4 reporting to foreman Rod Storbeck, who in turn reported to Riley. (*Id.* ¶ 16.) Burks claims he did not suffer any racial harassment or discrimination once he worked for Storbeck, and he liked the job so much he thought he "went to heaven." (*Id.* ¶ 17; Pls.' LR

4

56.1(b)(3)(C) ¶ 9A.) Thereafter, Riley signed off on an evaluation of Burks's performance that Burks considered to be fair and accurate. (Def.'s LR 56.1(a)(3) ¶ 17.) Burks successfully completed his probationary period on August 23, 2011 and was later notified that the Signal Helper position was being abolished as of October 10, 2011. (*Id.* ¶ 18.)

### B. Jones's Employment History

After his orientation, Jones was assigned to Zone 5, reporting to foreman Clay Smith. He was later assigned to Zone 4, reporting to Jeremy Bates for a few months before returning to Smith's gang on Zone 5. (*Id.* ¶ 22.) Although the job description for Signal Helper included the duties of laying wires and cables into the ground and changing signal lights, Jones primarily dug trenches. (*Id.*; Pls.' LR 56.1(b)(3)(B) ¶ 22.) Jones satisfactorily completed his probationary period around April 3, 2011. (Pls.' LR 56.1(b)(3)(C) ¶ 10.)

Jones claims that Smith once made him sit in a truck that was still cold and another time, Smith made him loosen up bolts out in the cold, although he admits it was a one-person job. (Def.'s LR 56.1(a)(3) ¶ 23.) After he returned to Smith's gang from Bates's gang, Jones claims that Smith did not call him for a job and thus he did not get paid. (*Id.* ¶ 24.) Jones also claims that Smith threatened to write him up for not picking up a shovel on May 20, 2011, but he does not know whether Smith fulfilled the threat, as Jones only saw one write-up from Smith, and it was not for this alleged infraction. (*Id.*; Pls.' LR 56.1(b)(3)(B) ¶ 24.)

On May 30, 2011, Jones alleges that Smith told him to stop shoveling, but he did not tell anyone else to stop shoveling at that time. (Def.'s LR 56.1(a)(3) ¶ 25; Pls.' LR 56.1(b)(3)(C) ¶ 29.) At some point in 2011, Smith also told a Caucasian employee who had not filed an EEO complaint to stop shoveling. (Def.'s LR 56.1(a)(3) ¶ 25.) Jones claims, however, that Smith screamed at him but did not scream at any other person on the crew to stop shoveling. (Pls.' LR 56.1(b)(3)(B) ¶ 25.)

On June 8, 2011, Smith commented that something (either a gate or a truck) was now "working like a striped monkey" or "running like a striped-ass monkey." (Def.'s LR 56.1(a)(3) ¶ 26; Pls.' LR 56.1(b)(3)(B) ¶ 26.) Jones admits that Smith did not make the remark to him or to any other person, but he was present when it was made and thought that it was in reference to his biracial children. ((Def.'s LR 56.1(a)(3) ¶ 26; Pls.' LR 56.1(b)(3)(B) ¶ 26; Pls.' LR 56.1(b)(3)(C) ¶ 27.) Jones thereafter lodged an internal EEO complaint with Schop about the "striped monkey" comment. (Def.'s LR 56.1(a)(3) ¶ 27; Pls.' LR 56.1(b)(3)(C) ¶ 28.) After investigating the complaint by looking online in the Urban Dictionary, researching in a book called "The Color of Words," and speaking to two African-American colleagues, Schop concluded that the comment was not racist. (Def.'s LR 56.1(a)(3) ¶ 27.) Jones contends that after he made the complaint, Smith would only communicate with him through others. (*Id.* ¶ 28.) Jones made no complaints to anyone at UP about any racially discriminatory conduct other than the "striped monkey" comment. (*Id.* ¶ 29.)

Jones was notified on October 10, 2011 that the Signal Helper position was being abolished in Zones 4 and 5. (*Id.* ¶ 30.) Paul Skinner, a Caucasian employee who did not file any EEO complaints, had his position as a Signal Helper abolished at the same time. (*Id.*)

C. **Plaintiffs' Applications for Promotion**

Before they were allowed to take the Skill Battery test required for promotion from Signal Helper to the position of Assistant Signal Person, employees were first required to apply online for an open position. (*Id.* ¶ 31.) Burks in Jones were not eligible to apply for the Assistant Signal Person position until they had successfully completed their ninety-day probationary periods. (*Id.* ¶ 32.)

On February 15, 2011, Riley looked into having four Signal Helpers, including plaintiff Jones and another employee named Ed Noe, tested for promotion to the Assistant Signal Person position. Riley followed up his inquiry about the group of four Signal Helpers on March 23, 2011. (*Id.* ¶ 33.) At some point[3] after completing his probationary period, Jones received a call from Riley telling him to go online and fill out an application for an Assistant Signal Person position. (*Id.* ¶ 34.) Riley never directly advised Jones to put his name down as a reference. (Pls.' LR 56.1(b)(3)(C) ¶ 10.)

---

[3] Jones's testimony on the timing of Riley's call was inconsistent, but it came either in his fifth month of employment, (Jones. Dep. at 44), or a couple of weeks after his 90-day probation period was completed, (*id.* at 107).

As of May 23, 2011, neither Jones nor Ed Noe had submitted an application, and neither took the Skill Battery Test. (Def.'s LR 56.1(a)(3) ¶ 37.) Jones claims he did fill out an online application in May, but he did not receive a response. (*Id.* ¶ 34; Pls.' LR 56.1(b)(3)(C) ¶ 33.) Jones then called his union representative, Harry Doucet, who advised he would look into it. (Def.'s LR 56.1(a)(3) ¶ 35; Pls.' LR 56.1(b)(3)(C) ¶ 10.) Doucet contacted UP on behalf of both Jones and another Signal Helper, Gerald Thomas, and he was told neither had an application on file. (Def.'s LR 56.1(a)(3) ¶ 35.) Around June 28, 2011, Doucet told both Jones and Thomas to reapply. (*Id.*) Jones claims that the did reapply sometime in June 2011 but again received no response. (Pls.' LR 56.1(b)(3)(C) ¶ 11.) Also around the same time, Riley moved out of his prior position of Manager of Signal Construction and was ultimately replaced by Jesse Stearns. (Def.'s LR 56.1(a)(3) ¶ 35.)

Thomas, who is African-American, reapplied on July 2, 2011, and he took the Skill Battery Test on July 30, 2011. (*Id.* ¶ 36.) Jones reapplied on September 3 or 4, 2011. (*Id.*; Pls.' LR 56.1(b)(3)(C) ¶ 33.)

For his part, Burks applied for a promotion to Assistant Signal Person on October 7, 2011. (Def.'s LR 56.1(a)(3) ¶ 38.) Burks claims that he was not called or encouraged to apply, but he acknowledges that he learned about the need to go online to apply from Jones in June or July 2011. (*Id.*) Both Plaintiffs' applications expired on January 3, 2012, and neither has applied for any other positions at UP. (*Id.* ¶ 39.)

8

Neither Plaintiff was terminated for unsatisfactory job performance, attendance, or any other work-performance related reason. (Pls.' LR 56.1(b)(3)(C) ¶ 14.) And although Burks feels as if he has been fired, since he was never recalled, neither he nor Jones was terminated; they were furloughed when the position of Signal Helper was abolished on October 10, 2011. (*Id.* ¶¶ 14, 24.)

Morgan Riley's son Seth Riley applied for the position of Assistant Signalperson on November 1, 2012, and he was invited to an interview, hiring session, and test session on November 12, 2012. He passed the Skill Battery Check and other prerequisites for hire, and he began his employment with UP on January 21, 2013. (*Id.* ¶ 24.)

### D. Plaintiffs' Charges of Discrimination

Jones filed a charge of discrimination with the EEOC on September 1, 2011, alleging:

> I was hired on or about January 3, 2011, as a Helper. On or about June 8, 2011 while working on location in Blair, Nebraska, my foreman made a derogatory comment regarding my race.
>
> I believe I was harassed because of my race, black, in violation of Title VII of the Civil Rights Act of 1964, as amended and Section 48-1104 of the Nebraska Fair Employment Practice Act.

The charge states that the earliest and latest date the discrimination took place was June 8, 2011, and the "Continuing Action" box is unchecked. (Def.'s LR 56.1(a)(3) ¶ 41.)

On November 8, 2011, Jones filed a second charge of discrimination with the EEOC, alleging:

9

> I began employment with Respondent on or about January 3, 2011. My most recent position with signal helper. I previously filed EEOC charge #563-2011-01513. Subsequent to filing the charge, I have been denied the opportunity to take a test for an Assistant Signalman position. On or about October 10, 2011, I was discharged.
>
> I believe that I have been discriminated against because of my race, Black, and in retaliation for having engaged in protected activity, in violation of Title VII of the Civil Rights Act of 1964, as amended.

(*Id.* ¶ 42.)

On October 31, 2011, Burks filed a charge of discrimination with the EEOC, alleging:

> I began employment with Respondent on or about January 3, 2011. I was discharged from employment on or about February 9, 2011. I filed an internal EEO complaint with Respondent, and was reinstated on or about May 24, 2011. Subsequent to filing my complaint, I have been denied the opportunity to take a test for the Assistant Signalman position. On or about October 10, 2011 I was discharged again.
>
> I believe that I have been discriminated against because of my race, Black, and in retaliation for engaging in protected activity, in violation of Title VII of the Civil Rights Act of 1964, as amended.

(*Id.* ¶ 43.)

## DISCUSSION

### I. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The

10

Court must draw all reasonable inferences in favor of the nonmovant. *Bennington v. Caterpillar Inc.,* 275 F.3d 654, 658 (7th Cir. 2001).

However, once the movant has carried its burden under Rule 56(c), "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986). The party opposing summary judgment must offer admissible evidence in support of his version of events, and hearsay evidence does not create a genuine issue of material fact. *McKenzie v. Ill. Dep't of Transp.,* 92 F.3d 473, 484 (7th Cir. 1996); *see Larimer v. Dayton Hudson Corp.*, 137 F.3d 497, 500 (7th Cir. 1998) ("'If the non-moving party bears the burden of proof on an issue, . . . that party may not rest on the pleadings and must instead show that there is a genuine issue of material fact.'") (citation omitted). "The mere existence of an alleged factual dispute is not sufficient to defeat a summary judgment motion. . . . The nonmovant will successfully oppose summary judgment only when it presents 'definite, competent evidence to rebut the motion.'" *Vukadinovich v. Bd. of Sch. Trs. of N. Newton Sch. Corp.*, 278 F.3d 693, 699 (7th Cir. 2002) (citations omitted).

"In considering a motion for summary judgment, this court is not required to scour the record in search of evidence to defeat the motion; the nonmoving party must identify with reasonable particularity the evidence upon which the party relies." *Pleniceanu v. Brown Printing Co.*, No. 05 C 5675, 2007 WL 781726, at *7 (N.D. Ill. Mar. 12, 2007) (citing *Johnson v. Cambridge Indus., Inc.,* 325 F.3d 892,

898 (7th Cir. 2003)); *see also Estate of Moreland v. Dieter*, 395 F.3d 747, 759 (7th Cir. 2005) ("We will not scour a record to locate evidence supporting a party's legal argument."); *Knapp v. County of Jefferson*, No. 06 CV 4028, 2007 WL 496396, at *1 (S.D. Ill. Feb. 13, 2007) (denying summary judgment where defendant's brief "contains no facts section and . . . fail[s] to point to the relevant portions of the record to establish the facts of this case"). Finally, the Court is "'not required to draw every conceivable inference from the record,'" *McCoy v. Harrison,* 341 F.3d 600, 604 (7th Cir. 2003) (citation omitted).

## II. RACIAL HARASSMENT

Defendant argues that summary judgment is warranted on Plaintiffs' racial harassment claims because: (1) Burks waived his claim; (2) both plaintiffs failed to exhaust their administrative remedies in connection with their harassment claims; and (3) there is no evidence supporting their harassment claims.

### A. Waiver

Following his original discharge on February 9, 2011, Burks was rehired after signing a waiver of all prior claims dated May 5, 2011. Burks does not reasonably dispute that any claims arising prior to the date are waived. Count I of the amended complaint does not allege that any harassment occurred after February 9, 2011, and therefore summary judgment is granted as to Count I.[4]

---

[4] Because Burks's claim of harassment has admittedly been waived, the Court need not address the other bases for dismissal argued by Defendant.

B.  **Failure to Exhaust**

Defendant contends that Jones failed to exhaust his administrative remedy with respect to all but one of his harassment allegations. *See Volovsek v. Wis. Dep't of Agric., Trade & Consumer Prot.*, 344 F.3d 680, 687 (7th Cir. 2003) (holding that "the filing of a timely EEOC complaint containing charges whose scope covers the claims in a subsequent district court complaint" is a condition precedent to suit). Jones's first EEOC charge alleged only that Smith had made the "striped monkey" comment on June 8, 2011, and it did not allege a continuing action. Jones's other allegations of harassment, *e.g.*, forcing him to sit in a cold vehicle, threatening to write him up, and ordering him to stop shoveling, occurred in prior to June 2011. Because those allegations were not included in the EEOC charge, and they are not reasonably related to the allegations contained in the charge, they cannot form the basis of Jones's harassment claim in this lawsuit. *See Jones v. Res-Care, Inc.*, 613 F.3d 665, 670 (7th Cir. 2010). While the failure to exhaust administrative remedies is subject to equitable arguments, Jones has presented none. *See Gibson v. West*, 201 F.3d 990, 993-94 (7th Cir. 2000).

C.  **Jones's Racial Harassment Claim**

Defendant argues that summary judgment is warranted on Jones's racial harassment claim because he has not established all of the necessary elements. In order to prove a claim of a racially hostile work environment, there must be "a material issue of fact as to four elements: (1) the work environment must have been both subjectively and objectively offensive; (2) race must have been the cause of the

13

harassment; (3) the conduct must have been severe or pervasive; and (4) there must be a basis for employer liability." *Yancick v. Hanna Steel Corp.*, 653 F.3d 532, 544 (7th Cir. 2013.)

Defendant maintains that the work environment was not subjectively and objectively offensive. "In determining whether the environment was objectively hostile, the court must consider all of the circumstances, including the frequency and severity of conduct, whether it is threatening and/or humiliating or merely offensive, and whether the harassment unreasonably interferes with an employee's work. . . . Indeed, the threshold for plaintiffs is high, as the workplace that is actionable is one that is hellish." *Whittaker v. N. Ill. Univ.*, 424 F.3d 640, 645 (7th Cir. 2005) (internal quotations and citations omitted). In this case, Jones alleges that Smith compared a gate or truck to a "striped monkey" when Jones was nearby. This single comment, which was not directed at Jones, is not frequent or severe enough to establish a hostile work environment under Title VII. *See Peters v. Renaissance Hotel Operating Co.*, 307 F.3d 535, 552 (7th Cir. 2002). Additionally, there is no evidence in the record establishing that the alleged harassment was based on race. While Jones subjectively believed that the comment referred to his biracial children, he offers no facts rebutting Schop's conclusion that it had no racial connotation in the first place. Summary judgment is therefore granted as to Count III of the amended complaint.

## III. RETALIATION

To prove retaliation in violation of Title VII, a plaintiff can proceed under either the direct or indirect method of proof. "The direct method requires that the plaintiff provide direct or circumstantial evidence of the employer's discriminatory animus or retaliatory behavior. . . .The indirect method, by contrast, requires the plaintiff to follow the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, [411 U.S. 792, 802-04] (1973). Under the *McDonnell Douglas* framework, after the plaintiff makes a prima facie case of discrimination or retaliation, the burden shifts to the employer to articulate a legitimate non-discriminatory reason for the action. Doing so shifts the burden back to the plaintiff to show that the employer's proffered reason is pretext, which then permits an inference that the employer's real reason was unlawful." *Johnson v. Gen. Bd. of Pension & Health Benefits of the United Methodist Church*, 733 F.3d 722, 727-28 (7th Cir. 2013).

### A. Failure to Promote

Plaintiffs have pointed to no evidence in the record sufficient to establish retaliatory failure to promote under the direct method of proof. They also have failed to demonstrate the existence of all necessary elements under the indirect method of proof, which requires a plaintiff to show that: "(1) she was a member of a protected class; (2) she applied for and was qualified for the position sought; (3) she was rejected for the position; and (4) the employer promoted someone outside the protected group who was not better qualified than the plaintiff." *Id.* at 728-29.

Although Jones testified that he applied twice before his third application was ultimately accepted, there is no admissible evidence in the record establishing that he was prevented by UP from submitting an application. His supposition about possible nefarious motives on UP's part does not create a triable issue of fact. There is also no evidence demonstrating that Burks could not have submitted an application earlier, despite his supervisors' failure to encourage him to do so. In addition, Plaintiffs have offered no facts showing that there were any open Assistant Signal Person positions open between the time Plaintiffs applied and their applications expired, and thus they were not rejected at all. Finally, Plaintiffs have offered no examples of other employees outside the protected class who were not better qualified but were promoted during that time frame.

B.  **Retaliatory Harassment**

Burks and Jones also claim that they were subjected to other forms of retaliation for complaint about racial harassment. Again, neither plaintiff offers evidence under the direct method of proof. Under the indirect method, each must show that: "(1) he is a member of a protected class; (2) he was meeting his employer's legitimate performance expectations; (3) he suffered an adverse employment action;" and (4) other similarly situated employees who had not complained were treated more favorably. *Huang v. Continental Cas. Co.*, — F.3d —, 2014 WL 2619689, at *2 (7th Cir. June 13, 2014); *see also Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006) ("[T]he employer's actions must be harmful

to the point that they could well dissuade a reasonable worker from making or supporting a charge of discrimination.").

The only evidence in the record supporting Burks's claim of retaliation is his allegation that he was forced to dig outside for four hours during a lightning storm. He admitted, however, that national weather tracking data contradict his allegation that there was a storm that day. And even crediting his unsupported recollection, it cannot be said that working an outdoor job in a storm is the type of action that would dissuade a reasonable worker from making a complaint about discrimination. *See Porter v. City of Chi.*, 700 F.3d 944, 954 (7th Cir. 2012) ("[N]ot everything that makes an employee unhappy is an actionable adverse action."). Also significant is the fact that Burks was granted a transfer immediately after requesting one, and he had no further complaints about harassment. Moreover, he was the only Signal Assistant on Hoy's crew, and thus he has not shown that there were any similarly situated employees who were treated more favorably. Summary judgment is therefore granted as to Count II, Burks's retaliation claim.

Jones also has not offered evidence of an adverse employment action or that he was treated less favorably than a similarly situated employee. The only instance of retaliatory harassment in the record is his claim that Smith would no longer speak with him directly after he filed his EEOC charge. Even if Smith completely "froze him out," that would not "materially alter the terms or conditions of employment to be actionable under the antidiscrimination provision of Title VII." *Porter*, 700 F.3d at 954; *see also Chaib v. Ind.*, 744 F.3d 974, 987 (7th Cir. 2014)

(explaining that even under the lower retaliation standard, "'petty slights, minor annoyances, and simple lack of good manners'" do not suffice" to establish an adverse employment action) (quoting *Burlington*, 548 U.S. at 68). Summary judgment is therefore granted as to Count IV.

## CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment [Doc. No. 61] is granted.

**SO ORDERED.**  **ENTERED:**

*Maria Valdez*

**DATE:** ___July 7, 2014___

                           **HON. MARIA VALDEZ**
                           **United States Magistrate Judge**